**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CAPP, INC., YOUNG PEOPLES DAY CAMPS INC., KMJA DAY CAMPS, INC., AND PRAYUS GROUP LLC, on behalf of themselves and all others similarly situated, | Case No. 1:23-cv-04676 |
| Plaintiffs, | |
| v. | |
| DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, AND DISCOVER BANK, | |
| Defendants. | |
| LEMMO'S PIZZERIA, LLC, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-14250 |
| Plaintiff, | |
| v. | |
| DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100, | |
| Defendants. | |
| SUPPORT ANIMAL HOLDINGS, LLC, and LENNYS CASITA, LLC, individually, and on behalf of all other similarly situated, | Case No. 1:23-cv-15297 |
| Plaintiffs, | |
| v. | |
| DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100, | |
| Defendants. | |

**PLAINTIFFS' MOTION AND MEMORANDUM FOR AN AWARD OF ATTORNEYS'
FEES, COSTS, AND SERVICE AWARDS**

**<u>TABLE OF CONTENTS</u>**

<u>**Page**</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

I.      Settlement Class Counsel's Pre-Filing Investigation and Filing of the Lawsuits............. 4

II.     Initial Litigation and Discovery in *CAPP* and Coordination of the Related Actions ........ 5

III.    Mediation and the Original Settlement ............................................................................. 6

IV.     Confirmatory Discovery ................................................................................................... 7

V.      Preliminary Approval of the Original Settlement ............................................................. 8

VI.     Discover Identifies Additional Data and the Parties Conduct Additional
        Confirmatory Discovery and Negotiate Modifications to the Settlement. ....................... 8

VII.    Preliminary Approval of the Modified Settlement ........................................................... 9

VIII.   Settlement Class Counsel's Ongoing Work on Settlement Implementation and
        Communications With Class Members .............................................................................. 9

THE SETTLEMENT ......................................................................................................... 10

ARGUMENT .................................................................................................................... 11

I.      The Requested Attorneys' Fees Are Reasonable............................................................. 11

        A.      The Requested Fee Award Is Reasonable in Relation to What Settlement
                Class Members Will Recover. ............................................................................. 11

                1.      Settlement Class Counsel Achieved an Outstanding Result for the
                        Settlement Class................................................................................... 13

                2.      Settlement Class Counsel Devoted Very Substantial Time and
                        Resources to Achieving the Result Here. ............................................. 17

                3.      The Risk of Non-Payment Here Was Substantial.................................. 18

                4.      The Stakes of this Litigation Further Support the Requested Fee. .......... 20

        B.      The Absence of Objections to Date Further Supports the Requested Fee
                Award.................................................................................................................. 21

II.     The Court Should Award Reimbursement of Expenses. .................................................. 21

III.    The Requested Service Awards Should Be Approved. .................................................... 22

CONCLUSION.................................................................................................................. 23

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   896 F.3d 792 (7th Cir. 2018) ................................................................11

*Briggs v. PNC Fin. Servs. Grp. Inc.*,
   No. 1:15-CV-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ......................................23

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*,
   897 F.3d 825 (7th Cir. 2018) ................................................12, 13, 22

*Carnegie v. Household Int'l, Inc.*,
   445 F. Supp. 2d 1032 (N.D. Ill. 2006) ................................................17

*Castillo v. Noodles & Co.*,
   No. 16-CV-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016)................................23

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ................................................11, 22

*Hale v. State Farm Mut. Auto. Ins. Co.*,
   No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)................................13

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   792 F. Supp. 2d 1028 (N.D. Ill. 2011) ................................................20

*In re Broiler Chicken Antitrust Litig.*,
   No. 16 C 8637, 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ......................................12, 13, 18

*In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*,
   251 F. Supp. 3d 1225 (N.D. Ind. 2017) ................................................11

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
   332 F.R.D. 202 (N.D. Ill. 2019), *aff'd sub nom. Walker v. Nat'l Collegiate
   Athletic Ass'n*, No. 19-2638, 2019 WL 8058082 (7th Cir. Oct. 25, 2019) ..............................18

*In re Stericycle Sec. Litig.*,
   35 F.4th 555 (7th Cir. 2022) ................................................11, 18

*In re TikTok, Inc., Consumer Priv. Litig.*,
   617 F. Supp. 3d 904 (N.D. Ill. 2022) ................................................12, 16, 18

*In re Trans Union Corp. Priv. Litig.*,
   No. 00 C 4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009), *order modified
   and remanded*, 629 F.3d 741 (7th Cir. 2011) ................................................19

**TABLE OF AUTHORITIES**
(continued)

**Page**

*McDaniel v. Qwest Commc'ns Corp.*,
    No. 05 C 1008, 2011 WL 13257336 (N.D. Ill. Aug. 29, 2011), *aff'd sub nom*,
    *Bauer v. Qwest Commc'ns Co., LLC*, 743 F.3d 221 (7th Cir. 2014) .......................................21

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .................................................................................................12

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .....................................................................................18

*Scott v. Dart*,
    99 F.4th 1076 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 1166 (2025).....................................22

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) .................................................................................................19

*T.K. Through Leshore v. Bytedance Tech. Co.*,
    No. 19-cv-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ...........................................20, 21

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) .................................................................................................11

*Wong v. Accretive Health, Inc.*,
    No. 1:12-cv-03102, 2014 WL 7717579 (N.D. Ill. Apr. 30, 2014), *aff'd*, 773
    F.3d 859 (7th Cir. Dec. 9, 2014) .............................................................................................21

**Statutes**

18 U.S.C. § 1962(c)–(d)................................................................................................................4

**Court Rules**

Fed. R. Civ. P. 23(h) ...................................................................................................................11

Fed. R. Civ. P. 26(f)..................................................................................................................5, 6

## INTRODUCTION

In July 2023, Discover publicly disclosed that it had, for nearly 17 years, systematically misclassified certain credit card transactions and, as a result, assessed inflated interchange fees on such transactions. Starting earlier that year, Settlement Class Counsel had begun investigating this issue, and in the two-plus years since that time they have worked diligently to deliver restitution to affected merchants and other businesses. Through their vigorous efforts, Settlement Class Counsel secured an excellent Settlement, pursuant to which eligible businesses will receive **100 percent of their estimated damages, plus interest**. In total, Discover will pay up to a maximum of $1.225 billion plus additional interest—and in all events no less than $540 million—to affected entities.[1]

Settlement Class Counsel now respectfully petition the Court for an award of attorneys' fees of $25 million plus reimbursement of litigation expenses of $307,158.03, and also ask the Court to grant service awards of $7,500 for each of the five Settlement Class Representatives. Any fees, expenses, and service awards granted by the Court will be paid by Discover on top of (i.e., in addition to) the payments to Settlement Class Members, and thus will not affect the amounts paid to Settlement Class Members.

The Settlement represents an exceptional result for the Settlement Class. It ensures that eligible businesses are paid the full measure of restitution they are owed, plus interest through the Escrow Final Funding Date—a rare outcome for any class action. The Settlement also includes well-tailored notice, claims, and allocation processes, all of which were heavily negotiated and thoughtfully designed to reach the affected entities, maximize participation,

---

[1] Unless otherwise defined, capitalized terms appearing in this motion are defined as provided for in the Class Action Settlement Agreement and Release, *see* ECF No. 65-1 (the "Settlement Agreement" or "Settlement").

calculate settlement payment amounts using the best available data, and ensure that settlement payments go to the entities that incurred the alleged overcharges.

Settlement Class Counsel achieved this result in the face of considerable risks and uncertainty. From the outset, Discover sought discovery regarding a potential motion to compel arbitration, which would have created risks and, at the least, delayed the litigation considerably. Plaintiffs also would have faced a vigorous defense, including Discover's challenge to the premise that it had a legal obligation to Settlement Class Members in implementing its internal classification system.

Further, although the Settlement occurred at an early stage of the litigation procedurally, Settlement Class Counsel expended very significant resources working on and attempting to resolve these cases, with no guarantee they would ever receive any compensation. Over a nearly two-year period, Settlement Class Counsel conducted an extensive investigation of the facts; conducted and coordinated early litigation and discovery efforts; engaged in an intensive mediation process before the Honorable Jay Gandhi (Ret.) of JAMS, including three in-person mediation sessions and numerous follow-up mediation conferences; conducted substantial confirmatory discovery that included the analysis of Discover's transactional data and documentation, formal interviews with pertinent Discover employees and data analysts, and work with several subject matter experts; and negotiated very favorable settlement terms. In particular, negotiating and finalizing the Settlement, which included extensive notice documentation and other exhibits, required a unique effort by Settlement Class Counsel, beyond what is required in settling a typical class action. Moreover, after Discover identified additional data for the early part of the class period following the parties' execution of the original settlement agreement, Settlement Class Counsel worked hard to negotiate modifications to the

Settlement, Methodology, and notice program, securing substantial additional benefits for the Settlement Class in the process. Settlement Class Counsel's work has continued after the modified Settlement was reached, including extensive work with the Settlement Administrator on notice implementation efforts and communication with numerous Settlement Class Members who have contacted Settlement Class Counsel. And, as expressly contemplated in the Settlement, Settlement Class Counsel's work on implementation efforts and communicating with Settlement Class Members will continue through the Fairness Hearing, and indeed long after that should the Court grant final approval of the Settlement.

Compared to even the minimum $540 million amount that will be paid to affected entities here, the requested fee represents a modest percentage, well below the ranges typically provided for in contingent representation arrangements and awarded in class cases. The fee requested here is well-justified under applicable Seventh Circuit standards and the circumstances of this case. Moreover, the litigation expenses for which Settlement Class Counsel seek reimbursement were incurred in litigating and resolving this litigation and are reasonable in amount. Finally, the requested service awards for each of the five Settlement Class Representatives are in line with applicable standards in this Circuit and reasonable given their commitment to the Settlement Class.

Settlement Class Counsel respectfully ask that the Court grant the requested attorneys' fees, expenses, and service awards.

## **BACKGROUND**

The Joint Declaration of Settlement Class Counsel, filed concurrently herewith, includes further detail about counsel's work in investigating, prosecuting, and working to resolve the claims in this case. The following is a summary of those efforts.

I.       **Settlement Class Counsel's Pre-Filing Investigation and Filing of the Lawsuits**

Beginning in or around April 2023, Settlement Class Counsel separately started investigating the possible misclassification of Discover credit card accounts.  Joint Decl. ¶ 6. Collectively, those investigative efforts included, *inter alia*, reviewing Discover's merchant operating regulations, interchange fee price lists, financial statements, federal securities filings, and other publicly available information; interviewing potentially impacted entities; gathering and analyzing documents from several such entities, including agreements between those entities and Discover or other intermediaries; and conducting legal research into potential claims and theories of liability.  *Id*. ¶¶ 6–7.

On July 19, 2023, the *CAPP* plaintiffs filed the first class action related to this issue, *CAPP, Inc. v. Discover Financial Services*, No. 1:23-cv-04676 (N.D. Ill.) ("*CAPP*").  Joint Decl. ¶ 8.  The *CAPP* complaint alleged that Discover had misclassified credit card accounts resulting in interchange fee overcharges and asserted claims under the federal Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1962(c)–(d), various state consumer protection statutes and common law.  That same day, Discover disclosed that from 2007 through 2023, it had systematically misclassified certain "Consumer" credit card accounts as "Commercial" accounts.[2]  In that same announcement, Discover disclosed that it had recorded "a liability of $365 million . . . to provide refunds to merchants and merchant acquirers as a result of the card product misclassification."[3]

---

[2] *See* Discover Financial Services Form 8-K, Ex. 99.1, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1393612/000139361223000037/dfs-20230719.htm (last accessed Dec. 1, 2025).

[2] *Id*.

- 4 -

Two additional class action lawsuits were filed, on August 14, 2023 and August 29, 2023 respectively, in the Central District of California and later transferred to this District: *Lemmo's Pizzeria, LLC v. Discover Financial Services*, No. 1:23-cv-14250 ("*Lemmo's*") and *Support Animal Holdings, LLC v. Discover Financial Services*, No. 1:23-cv-15297 ("*Support Animal*"). Those lawsuits alleged claims for breach of contract, unjust enrichment, and violations of California's consumer protection statute. On January 8, 2024, the *Lemmo's* and *Support Animal* cases were deemed related to the *CAPP* case and assigned to this Court. *See CAPP*, ECF No. 36.

**II.**    **Initial Litigation and Discovery in *CAPP* and Coordination of the Related Actions**

Beginning in early August 2023, the CAPP plaintiffs sought to initiate merits discovery, including seeking a Rule 26(f) conference. Joint Decl. ¶ 14. Discover sought to oppose the same, and simultaneously sought extensions to deadlines, including the time to file a joint initial status report. *Id*. CAPP plaintiffs moved to compel a Rule 26(f) conference and opposed Discover's motion to extend its deadlines, including the time to file a joint initial status report. *Id*. ¶¶ 14, 17; CAPP, ECF Nos. 19, 22–24, 26–27. By September 11, 2023, Settlement Class Counsel entered into a joint prosecution agreement and had commenced coordinating their efforts. Joint Decl. ¶ 15. On September 12, 2023, the CAPP parties held a Rule 26(f) conference during which, among other things, Discover discussed certain data limitations and the corresponding need for CAPP plaintiffs to obtain data from merchant acquirers in order to identify merchants not reflected in Discover's data. *Id*. ¶ 18. On September 12, 2023, Discover served the CAPP plaintiffs with an initial set of written discovery requests seeking their agreements with Discover and any merchant acquirers and/or credit card processors. *Id*. at ¶ 19.

On September 28, 2023, the Court entered a Minute Order in the CAPP action directing the parties to submit a joint initial status report within five days and to cooperate on the exchange of any arbitration-related documents in a prompt manner. *See* CAPP, ECF No. 28. The CAPP

plaintiffs timely responded to Discover's discovery requests, producing both written responses and responsive documents. Joint Decl. ¶ 23. The Lemmo's and Support Animal plaintiffs thereafter produced similar responsive documents. *Id*.

The *CAPP* and *Lemmo's* plaintiffs subsequently moved to consolidate the three related actions and sought the appointment of *CAPP* and *Lemmo's* counsel as interim class counsel and *Support Animal* counsel as liaison counsel. *See CAPP*, ECF Nos. 39, 40.

## III.   **Mediation and the Original Settlement**

With initial discovery and litigation underway, the parties began discussing a possible mediation in late 2023. After the parties informed the Court they had scheduled a mediation with the Honorable Jay Gandhi (Ret.) of JAMS, the Court granted the parties' joint motion to stay the litigation pending mediation, and thereafter extended the stay based on the parties' continued mediation efforts. *See CAPP*, ECF Nos. 42, 44, 46, 48, 50, 52, 54. Over the next several months, the parties engaged in extensive, hard-fought settlement negotiations, including three full-day, in-person mediation sessions as well as numerous follow-up meetings and discussions through the mediator. Joint Decl. ¶ 27. In connection with the mediation sessions, the parties prepared and exchanged formal mediation statements setting forth their views on the claims, defenses, and damages, and exchanged and analyzed pertinent data and documents. *Id*. ¶ 28.

Through these efforts, the parties reached an agreement in principle on key settlement terms. The parties thereafter spent multiple months negotiating, drafting, and finalizing the written original settlement agreement, methodology for calculating settlement payments, notice plan, notice and claim forms, and various other settlement documents. Given the complexity of the payment processing ecosystem, data limitations at Discover, and other unique qualities of this litigation, the negotiations required a uniquely substantial effort by the parties and

Settlement Class Counsel, including in negotiating and crafting the notice, claims, and allocation processes.  Joint Decl. ¶ 32.

After the parties reached agreement in principle on the material terms of the original settlement, the parties separately negotiated terms regarding attorneys' fees, expenses, and service awards, through Judge Gandhi.  Joint Decl. ¶ 34.

**IV.**    **Confirmatory Discovery**

Settlement Class Counsel also conducted extensive confirmatory discovery, including, *inter alia*: (1) review and analysis of data regarding the estimated fee overcharges; (2) review and analysis of raw sample data—for a statistically significant random sample of Settlement Class Members—to validate the proposed methodology for estimating overcharges; (3) a formal interview with Discover's former Vice President of Global Pricing, Controls, and Analytics; (4) a site visit along with two of Plaintiffs' experts, to Discover's headquarters in Riverwoods, Illinois that included interviews of top members of Discover's data analytics team, including a Senior Manager and Discover's then-Vice President of Global Pricing and Analytics, and where Settlement Class Counsel and the experts investigated Discover's pertinent databases, confirmed the scope and nature of Discover's data used for the calculations set forth in the Methodology, reviewed Discover's quality controls and validation efforts to ensure the accuracy of the underlying the data used to calculate restitution, and reviewed and analyzed the computer code underlying the calculations set forth in the Methodology; and (5) a formal interview of Discover Bank's then-Vice President of Portfolio Management regarding the assumptions used in the Methodology.  Joint Decl. ¶¶ 36–39.

Settlement Class Counsel expended considerable time and resources on these efforts, to validate the data and Discover's process for identifying the impacted accounts, and to ensure that the Methodology is the most accurate estimate of overcharges for each MID.  Throughout the

settlement negotiation and confirmatory discovery processes, Settlement Class Counsel worked

with multiple subject matter experts that they retained to assist their efforts in this regard.  Joint

Decl. ¶¶ 37–38.

## V.     Preliminary Approval of the Original Settlement

On August 27, 2024, Settlement Class Counsel moved for preliminary approval of the

original settlement.  *CAPP*, ECF No. 59.  The Court granted preliminary approval of the original

settlement on October 22, 2024.  *CAPP*, ECF No. 63.

## VI.    Discover Identifies Additional Data and the Parties Conduct Additional Confirmatory Discovery and Negotiate Modifications to the Settlement.

After the Court granted preliminarily approval of the original settlement, Discover

notified Settlement Class Counsel that Discover had uncovered additional MID-level

transactional data that allowed for more precise overcharge calculations for the misclassified

card transactions that occurred during the years 2007 through 2015.  *See* Joint Decl. ¶ 45.

Thereafter, the parties engaged in a second round of vigorous arm's-length negotiations and

confirmatory discovery between November 2024 and January 2025.  As part of that additional

discovery, Plaintiffs requested and Discover produced a statistically random sample of the newly

uncovered data for review and analysis by Plaintiffs' expert.  *Id*. ¶ 47.  Settlement Class Counsel

also conducted a second interview of Discover's former Vice President of Global Pricing,

Controls, and Analytics regarding the source, reliability, and completeness of the new data.  *Id*.

¶ 48.  Settlement Class Counsel worked hard on negotiating the terms of the modified

Settlement, which includes multiple improvements, for the benefit of the Settlement Class, to the

original settlement, including an improved Methodology, a $40 million increase to the Minimum

Total Class Payout (i.e., from $500 million to $540 million), improved interest terms, and

additional improvements simplifying the claims process.  *See generally CAPP*, ECF No. 65 at 5-9 (describing improvements); Joint Decl. ¶¶ 49-53.[4]

## VII.   Preliminary Approval of the Modified Settlement

On January 22, 2025, Plaintiffs moved for preliminary approval of the Settlement, as modified.  *CAPP*, ECF No. 65.  On July 30, 2025, the Court granted preliminary approval of the modified Settlement.  *CAPP*, ECF No. 68 ("Preliminary Approval Order").

## VIII.   Settlement Class Counsel's Ongoing Work on Settlement Implementation and Communications With Class Members

During the time between the Court's initial preliminary approval order and Discover's notifying Settlement Class Counsel about its identification of the additional data, Settlement Class Counsel worked hard on notice and settlement implementation matters, working closely with the Settlement Administrator.  Joint Decl. ¶¶ 44, 58.

Likewise, in the time since the Court's entry of the Preliminary Approval Order (i.e., for the modified Settlement), Settlement Class Counsel have continued to work hard on notice and other implementation efforts and on communicating with Settlement Class Members and third-party aggregators following the commencement of the notice program, providing them with information about the litigation, the Settlement, and how to participate.  Counsel's efforts during this period have also included working with the Settlement Administrator and Discover on various supplemental materials needed to fully and successfully execute the administration process.  Joint Decl. ¶ 58.

These implementation-related efforts will continue over the next several months through the Fairness Hearing scheduled for May 20, 2026.  Moreover, as contemplated by the Settlement,

---

[4] Notwithstanding these improvements and the significant additional effort expended by Settlement Class Counsel, the maximum limits for attorneys' fees and expenses remained unchanged in the modified Settlement.  *See* Settlement § 2.5.

Settlement Class Counsel will continue to devote considerable resources in this matter after the Fairness Hearing should the Court grant final approval of the Settlement, including overseeing and working on payment allocation and distribution and other implementation efforts, and ongoing communications with Settlement Class Members.  Joint Decl. ¶ 60.

## **THE SETTLEMENT**

As discussed further in Plaintiffs' concurrently filed motion for final settlement approval, the Settlement requires Discover to reimburse entities involved in processing or accepting a Misclassified Card Transaction during the Relevant Period—January 1, 2007 through December 31, 2023—for the estimated fee overcharges they incurred.  Payment Eligible Settlement Class Members will receive payments calculated based on ***100 percent of their estimated damages, plus interest***.  Discover will pay no less than $540 million, and up to more than $1.2 billion, to affected entities.[5]  The Settlement also includes a carefully-crafted Notice Program and claims process to account for limitations in Discover's data, and to ensure that settlement payments are directed to the entities that bore the alleged fee overcharges.

The Settlement provides that all attorneys' fees, costs, and service awards that the Court grants, as well as the fees and costs of the Settlement Administrator, will be paid separately by Discover on top of (i.e., in addition to) the payments to Settlement Class Members.  *See* Settlement §§ 2.44, 2.62, 3.6, 4.

---

[5] Since the commencement of these lawsuits, Discover has engaged and continues to engage in discussions with certain Settlement Class Members (or entities that would otherwise meet the definition of Settlement Class Members) to resolve the claims raised by these lawsuits on an individual basis.  Certain payments made or agreed to by Discover to resolve such claims (defined as "Non-Claimant Payments" in the Settlement), up to the Total Allocated MID Amounts for those entities (but including interest only through the date of the Preliminary Approval Order (i.e., July 30, 2025) will be considered in determining whether Settlement Payments are to be adjusted to ensure that Discover's total payments to affected entities meet the minimum threshold (i.e., the Minimum Total Class Payout) and do not exceed the maximum limit (i.e., the Total Settlement Payout).  Settlement §§ 2.2, 3.5.1.

**ARGUMENT**

**I.     The Requested Attorneys' Fees Are Reasonable.**

In accordance with the Settlement, Settlement Class Counsel request an award of attorneys' fees in the amount of $25 million.  Pursuant to the Settlement, any fees awarded will be paid by Discover in addition to (i.e., on top of) Settlement Payments to Settlement Class Members.  Settlement § 3.6.3.  As discussed below, the requested fee is reasonable and justified under applicable standards and the circumstances of this litigation.

**A.     The Requested Fee Award Is Reasonable in Relation to What Settlement Class Members Will Recover.**

In class actions, courts may award reasonable attorneys' fees "that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  In the Seventh Circuit, "a district court must attempt to approximate the fee that the parties would have agreed to at the outset of the litigation without the benefit of hindsight."  *In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 (7th Cir. 2022) (citing *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796–97 (7th Cir. 2018)).  In analyzing fee requests in the context of class actions, where the receipt of a fee is entirely contingent on the outcome, courts favor a percentage-of-the-fund approach "because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante*."  *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017) (citing *In re Synthroid Marketing Litig.*, 325 F.3d 974, 979–80 (7th Cir. 2003)).[6]

---

[6] Courts in this Circuit are not required to conduct a lodestar cross-check in determining the appropriate fee to award class counsel.  *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011); *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach."); *see also* Joint Decl., Ex. 6 ("Fitzpatrick Decl.") ¶ 30.  With that said, Settlement

- 11 -

Because the attorneys' fees here are to be paid by Discover separately from (i.e., on top of) the settlement amount, the fee percentage is properly calculated based on: (a) the attorneys' fees; divided by (b) the sum of: (i) the settlement amount paid plus (ii) the attorneys' fee. *See Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 833 n.25 (7th Cir. 2018) (citing *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014)).

In complex class actions, courts in the Seventh Circuit regularly approve fee awards of one-third. *See, e.g.*, *Camp Drug Store*, 897 F.3d at 833–34; *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 943 (N.D. Ill. 2022); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2021 WL 5709250, at *4 (N.D. Ill. Dec. 1, 2021); *see also* 5 Newberg and Rubenstein on Class Actions § 15:73 (6th ed.) ("The age-old assumption is that tort lawyers receive a third of their clients' recovery."). Moreover, empirical research shows that the average fee percentages awarded in this Circuit are higher than 25%. Joint Decl., Ex. 6 ("Fitzpatrick Decl.") ¶ 20 (mean and median fee awards in Seventh Circuit of 27.4% and 29%, respectively; citing other empirical research showing similar results).

The requested fee here is eminently reasonable in relation to what affected businesses will recover. The Settlement guarantees that affected End Merchants, Merchant Acquirers, and Payment Intermediaries will recover at least $540 million (i.e., the Minimum Total Class Payout, *see* Settlement § 2.37), and likely significantly more based on the claims submitted. A $25 million fee would therefore represent at most ***4.4 percent***[7] (and likely less) of the total that would be paid to affected entities and counsel, far lower than the percentage fees typically awarded in class cases. *See* Fitzpatrick Decl. ¶¶ 20–24, 29.

---

Class Counsel is of course prepared to provide their lodestar information should the Court request it.

[7] $25 million ÷ ($540 million + $25 million) = 0.044.

In evaluating fees under the percentage approach, courts in the Seventh Circuit consider the following factors in addition to the typical range of percentage awards in contingency class cases: the risk of nonpayment, the quality of the attorney's performance, the amount of work necessary to resolve the litigation, and the stakes of the case. *Camp Drug Store*, 897 F.3d at 832–33; *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 ("A substantial award is warranted here as a proper incentive for high quality counsel to take on complex cases, requiring a massive investment of time and money, with such a high risk of non-payment."). These factors all strongly support the reasonableness of the requested fee here.

### 1. Settlement Class Counsel Achieved an Outstanding Result for the Settlement Class.

The quality of Settlement Class Counsel's performance here is reflected in their vigorous advocacy on behalf of the Settlement Class and the strong result achieved through the Settlement. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018); *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3. Pursuant to the terms of the Settlement, eligible Settlement Class Members will receive payments based on 100 percent of the estimated overcharges they incurred during the class period, plus applicable interest through the Escrow Final Funding Date. Leveraging the best available data for the entire class period, the Settlement employs a Methodology that estimates for each affected MID (i.e., unique merchant identifier) the difference between (i) the interchange fees Discover assessed on Misclassified Card Transactions, and (ii) what Discover would have assessed on those transactions had the credit cards at issue been correctly classified. Settlement, Ex. B §§ 2.1–2.4. Then, the Settlement Administrator will determine for each MID a Total Allocated MID Amount, which represents the portion of the overcharges attributable to that MID. Settlement §§ 2.77, 3.5.3. In total, the Settlement obligates Discover to pay up to

- 13 -

approximately $1.225 billion plus additional interest (and a minimum of $540 million) in refunds to affected businesses.[8]

Settlement Class Counsel also worked hard to negotiate a robust notice program and user-friendly claims process that are thoughtfully-designed to reach Settlement Class Members, maximize participation, and ensure that the payments are received by the entities that incurred the overcharges.

Among other favorable Settlement terms, Settlement Class Counsel negotiated each of the following provisions, which will help maximize the amount that Settlement Class Members will receive:

***$540 Million Minimum Total Class Payout***.  Under the terms of the Settlement, Discover has agreed to pay affected entities a total of no less than $540 million (i.e., the Minimum Total Class Payout).  In the event that the total of all Settlement Payments due to all Payment Eligible Settlement Class Members, together with the Adjusted Total Non-Claimant Payment, would otherwise be less than $540 million, then each eligible Settlement Class Member's Settlement Payment will be increased pro rata until the total of all payments reaches the Minimum Total Class Payout.  Settlement § 3.5.5.

***Additional Interest***.  Over the course of settlement negotiations, Settlement Class Counsel secured significant improvements regarding the calculation and addition of interest. *First*, interest will accrue through the Escrow Final Funding Date (235 after the Effective Date),

---

[8] It bears mentioning that even the Settlement's $540 million "floor" amount is substantially higher than the $365 million that Discover originally set aside for the purpose of "provid[ing] refunds to merchants and merchant acquirers."  *See* Discover Financial Services Form 8-K, Ex. 99.1, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1393612/000139361223000037/dfs-20230719.htm (last accessed Dec. 1, 2025).

currently expected to occur in early 2027—which represents a significant improvement for the Settlement Class.  In the original settlement, Discover agreed to extend the end of the interest accrual period, from the end of 2023 to the date of preliminary settlement approval (October 22, 2024).  And in the modified Settlement, Settlement Class Counsel successfully negotiated a further extension of the accrual period, until the Escrow Final Funding Date.  Settlement § 5.11; Ex. B (Methodology) §§ 1.5, 1.14, 2.3; Joint Decl. ¶ 51.  This extension of the interest accrual period also ensures that Settlement Class Members will be protected should the Effective Date be delayed for any reason (including due to any appeals).  *Second*, the Methodology includes an assumption that interest for a given calendar year "starts to accrue as of July 1" instead of December 31 of that calendar year (which was the assumption used for the original settlement). Settlement § 2.3 (Step 1).  Taken together, these interest-related improvements are estimated to have increased the Settlement's Total Settlement Payout figure (i.e., the ceiling) by approximately $170 million.  Joint Decl. ¶ 51.

Relatedly, Settlement Class Members will benefit from the negotiated settlement escrow account funding schedule, which will allow additional interest to accrue (to be added on a pro rata basis to the Settlement Payments) on amounts deposited in the Settlement Escrow Account in advance of final payments to the Settlement Class.[9]

---

[9] Pursuant to the Settlement, Discover must pay an initial sum of $100 million (i.e., the First Funding Amount) into the Settlement Escrow Account within twenty-three days of entry of the Final Approval Order.  Within ten days of the Effective Date, Discover must pay the difference between that $100 million amount and a reasonable estimate of the aggregate total of all Settlement Payments due to eligible Settlement Class Members, as determined by the Settlement Administrator (i.e., the Second Funding Amount).  If the aggregate total of all Settlement Payments due to eligible Settlement Class Members ultimately exceeds the sum of the First Funding Amount plus the Second Funding Amount, then Discover will pay the difference by the Escrow Final Funding Date (235 days after the Effective Date).  Settlement § 5.11.

***Improved Methodology***.  After Discover located additional pre-2016 transactional data, the parties agreed to modify the Methodology (i.e., for calculating estimated overcharges for each MID) to use the new data rather than extrapolate Annual MID Amounts for years 2007 through 2015.  MID Amounts calculated using the updated data and Methodology are mostly higher than under the original data and Methodology.  For those MIDs where that was not the case, Settlement Class Counsel secured a provision whereby the MID Amounts for those MIDs will be calculated based on the original Methodology.  Settlement, Ex. B (Methodology) § 2.4. This provision ensures that no Payment Eligible Settlement Class Member will receive less than what it was entitled to receive under the original settlement.

***Settlement Base Payments***.  As a result of Settlement Class Counsel's advocacy, Discover also agreed to a provision whereby Payment Eligible Settlement Class Members will receive a minimum payment of $10.  Specifically, even if their total Settlement Payment would otherwise be calculated as less than $10, that Settlement Class Member will receive an additional Settlement Base Payment so that their total Settlement Payment will equal $10 (up to an aggregate maximum of $50 million for all such Settlement Base Payments).  Settlement § 3.5.4. This provision helps to ensure that all Settlement Class Members who submit valid claims will receive meaningful compensation.

Moreover, the high quality of Discover's counsel further supports the requested fee here. *See, e.g., In re TikTok, Inc.*, 617 F. Supp. 3d at 942.  Discover is represented by top-notch counsel at Covington & Burling LLP, who are highly regarded and have extensive experience defending complex civil litigation.  Settlement Class Counsel's ability to achieve an outstanding result is particularly notable given their formidable opposition.

2.      **Settlement Class Counsel Devoted Very Substantial Time and Resources to Achieving the Result Here.**

As summarized above and in their accompanying Joint Declaration, Settlement Class Counsel invested substantial time and resources to investigate, prosecute, and successfully resolve this litigation, including without limitation their extensive work investigating the facts in this case and negotiating the original settlement, modified Settlement, Methodology, Notice Program, claims process, notice and claim forms, and numerous other settlement documents here. *See generally* Joint Decl.; *see also CAPP*, ECF No. 65-3, Ex. 2. Settlement Class Counsel have zealously represented the interests of the Settlement Class for more than two years, and they respectfully submit that their efforts through all phases of this matter were critical to achieving the strong result reflected in the Settlement.[10] *See Carnegie v. Household Int'l, Inc.*, 445 F. Supp. 2d 1032, 1038 (N.D. Ill. 2006) (counsel "represent[ed] the class with intelligence

_____

[10] Shortly after Plaintiffs moved for preliminary approval of the modified Settlement, Discover and two regulators announced a series of consent orders that would, among other things, require Discover to "make full and complete restitution to the merchants, merchant acquirers, and other intermediaries adversely affected by the Bank's Unfair Acts or Practices," by distributing, at minimum $1.225 billion. *See* Amended and Restated Consent Order, Order for Restitution, and Order to Pay, *In the Matter of Discover Bank Greenwood, Delaware*, Nos. FDIC-23-0014b, FDIC-24-0103b, FDIC-24-0102 (Apr. 16, 2025), *available at* https://fdic.gov/discover-bank-enforcement-order.pdf; Order to Cease and Desist and Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as Amended, *In The Matter of Discover Fin. Servs. & DFS Servs. LLC*, Nos. 25-004-B-HC, 25-004-B-DEO, 25-004-CMP-HC, 25-004-CMP-DEO (Apr. 18, 2025), *available at* https://www.federalreserve.gov/newsevents/pressreleases/files/orders20250418a1.pdf; *see also FDIC Announces Three Orders Against Discover Bank, Greenwood, Delaware*, FDIC (Apr. 18, 2025), https://fdic.gov/news/press-releases/2025/fdic-announces-three-orders-against-discover-bank-greenwood-delaware; *Federal Reserve Board Announces Approval of Application by Capital One Financial Corporation to Merge with Discover Financial Services and Issues a Consent Order with Discover*, FEDERAL RESERVE (Apr. 28, 2025), https://www.federalreserve.gov/newsevents/pressreleases/orders20250418a.htm. While the details and relationship between this later-proposed restitution program and the Settlement are not totally clear, the consent orders adopt the maximum monetary value figure (i.e., Total Settlement Payout) of the proposed Settlement, and based on the limited descriptions provided to date, it appears likely will rely on notice and other processes provided by the Settlement.

and hard work"); *In re TikTok, Inc.*, 617 F. Supp. 3d at 939–43, 934, 915 (awarding attorneys'
fees equal to one-third of gross settlement fund at an early stage of litigation given the "quality
and amount of work that Class Counsel have performed[,]" including "months of arm's-length
negotiation punctuated by two mediation sessions led by a well-respected former federal judge");
*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 588 n.20, 598 (N.D. Ill. 2011) (finding the
"substantial" work "necessary to resolve" the litigation, including "wide-ranging and detailed
confirmatory discovery," weighed in favor of awarding attorneys' fees amounting to one-third of
the settlement fund); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
332 F.R.D. 202, 223 (N.D. Ill. 2019) (noting the "substantial amount of time" spent coordinating
the notice program with defendant and claims administrator), *aff'd sub nom. Walker v. Nat'l
Collegiate Athletic Ass'n*, No. 19-2638, 2019 WL 8058082 (7th Cir. Oct. 25, 2019).

Moreover, as discussed above, Settlement Class Counsel's work on settlement
implementation matters will continue through the Fairness Hearing, and long after the Fairness
Hearing should the Court grant final approval of the Settlement. Joint Decl. ¶ 60. Settlement
Class Counsel is fully committed to working on the settlement administration process until it
reaches its conclusion, which will not occur for more than a year, including overseeing work
related to the Settlement Administrator's payment allocation determinations, allocation
notifications, and payment distribution, and continuing to speak with Settlement Class Members.
*See* Settlement § 5.12.

### 3. <u>The Risk of Non-Payment Here Was Substantial.</u>

In evaluating a fee award, courts also consider the risk of non-payment faced by class
counsel. *In re Stericycle Sec. Litig.*, 35 F.4th at 563 ("In a high-risk case, counsel is more likely
to come away with nothing and thus would negotiate a higher contingent fee ex ante."); *In re
Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *1 ("[T]he Seventh Circuit has explained

that the goal of approximating the market rate can be "informed by a number of factors, including . . . the risk of non-payment at the outset of the case"). "The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). Here, Settlement Class Counsel took this matter on, and expended considerable time and resources in doing so despite "the opportunity cost of the engagement" and the very real risk that they might receive no compensation at all. *In re Trans Union Corp. Priv. Litig.*, No. 00 C 4729, 2009 WL 4799954, at *17 (N.D. Ill. Dec. 9, 2009), *order modified and remanded*, 629 F.3d 741 (7th Cir. 2011); Joint Decl., Ex. 2 ("Pratsinakis Decl.") ¶¶ 8–9; Joint Decl., Ex. 3 ("Heller Decl.") ¶¶ 7–8; Joint Decl., Ex. 4 ("Kick Decl.") ¶ 6. Those risks were present at the start, including during the several months Settlement Class Counsel investigated this matter before filing, and they continued to present themselves after the litigation commenced. Among other issues, Discover disputes that its internal account classification system created a legal obligation to the Settlement Class. Another was that following commencement of litigation, Discover sought discovery regarding a possible arbitration motion based on merchant acquirer and/or credit card processor agreements. *See, e.g., CAPP*, ECF No. 24. While Plaintiffs believe such arguments would have ultimately failed, Discover's motion to compel would have at the very least created risk and significantly delayed the litigation and relief. Further, Discover has made clear that it would oppose certification of a litigation class. Joint Decl. ¶ 74. Moreover, Discover's data limitations, along with the lack of ready access to the different contracts between Merchant Acquirers and End Merchants, might have created complications and challenges for measuring damages and obtaining relief for Settlement Class Members absent a settlement. *Id*. Settlement Class Counsel

took on this litigation knowing that these and other risks could result in their receiving no compensation at all.

Also worth noting in this regard is that Discover indicated relatively early on that it was considering implementing a remediation program on its own. Had this litigation continued, it is quite possible, if not likely, that Discover would have proceeded independently to implement a remediation program that lacked many of the benefits created as a result of the parties' negotiation, which include: more generous payment calculation terms, the default payment provisions negotiated as part of the Settlement, a minimum total payment amount (i.e., floor), minimum payments for valid claimants, the additional interest provisions that increase payments substantially, and the thoughtful, tailored notice program, user-friendly claims process, and allocation process. Despite this lingering risk (which remained even as the parties engaged in their mediation efforts), Settlement Class Counsel committed themselves and their resources to this litigation and to negotiating a strong class Settlement for the Settlement Class.

## 4. The Stakes of this Litigation Further Support the Requested Fee.

The stakes of this litigation further support the requested fee. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1038 (N.D. Ill. 2011) (finding relevant that stakes were "exceptionally large given the scale of the challenged activity, the complexity and costs of the legal proceedings, [and] the amount of money involved."); *T.K. Through Leshore v. Bytedance Tech. Co.*, No. 19-cv-7915, 2022 WL 888943, at *25 (N.D. Ill. Mar. 25, 2022). This litigation affects millions of businesses across the United States—those associated with the more than 11 million MIDs linked to Misclassified Card Transactions—and the total funds at issue is more than $1.2 billion with interest. Moreover, the complexities associated with determining the amounts owed to each Settlement Class Member due to the Misclassified Card Transactions mean that the structure and administration of any effective

remediation program are particularly important here. Settlement Class Counsel's hard work in negotiating, not just the overall monetary terms of the Settlement, but also the notice program and claims process, was critical to addressing those complexities, and further supports the requested fee.

> **B.** **The Absence of Objections to Date Further Supports the Requested Fee Award.**

The reaction of the class is another relevant factor in assessing the reasonableness of a requested fee award. *See Wong v. Accretive Health, Inc.*, No. 1:12-cv-03102, 2014 WL 7717579, at *1 (N.D. Ill. Apr. 30, 2014) ("[T]he reaction of the Class to the fee request supports the fee awarded"), *aff'd*, 773 F.3d 859 (7th Cir. Dec. 9, 2014); *McDaniel v. Qwest Commc'ns Corp.*, No. 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (that there were "no objections to the requested attorneys' fee award . . . 'indicates the appropriateness of the [fee] request'") (citation modified), *aff'd sub nom*, *Bauer v. Qwest Commc'ns Co., LLC*, 743 F.3d 221 (7th Cir. 2014). Here, the Settlement Administrator has commenced the notice program, including sending millions of direct mail and email notices, a very robust media and digital notice program, and establishing a Settlement Website. *See generally* Joint Decl., Ex. 1 ("Azari Decl."). The notices and Settlement Website identify the requested amount of attorneys' fees and expenses. To date, there have been no objections, to the Settlement or to the requested fees and expenses. Azari Decl. ¶ 85. Class Counsel will address any objections received in advance of the Final Approval Hearing.

## II.    **The Court Should Award Reimbursement of Expenses.**

It is well established that counsel who recover funds to benefit a class like this one are entitled to the reimbursement of reasonable litigation costs and expenses. *T.K. Through Leshore*, 2022 WL 888943, at *26. Settlement Class Counsel here seek reimbursement of expenses

totaling $307,158.03. As with the any attorneys' fees awarded, any expenses awarded by the Court will be paid by Discover in addition to (i.e., on top of), and will not impact, the settlement payments to Settlement Class Members. Settlement § 3.6.3.

As summarized in the accompanying firm declarations, the expenses for which Settlement Class Counsel seek reimbursement include expert costs, mediation fees, legal research, and travel for the mediations and in-person confirmatory discovery efforts. Pratsinakis Decl. ¶ 10; Heller Decl. ¶ 10; Kick Decl. ¶ 7; Joint Decl., Ex. 5, ¶¶ 5, 7. These expenses were reasonably incurred for the prosecution and resolution of this litigation, are reasonable in amount, and should be reimbursed.

## III.    The Requested Service Awards Should Be Approved.

Settlement Class Counsel also respectfully request that the Court approve service awards of $7,500 each for the five Settlement Class Representatives, to compensate them for their efforts and commitment on behalf of the Settlement Class. As with the attorneys' fees and expenses awarded, any service awards will be paid by Discover on top of (i.e., in addition to) payments to Settlement Class Members. Settlement, § 3.6.4.

Courts routinely grant service awards compensating named plaintiffs for work done on behalf of the class. *See Scott v. Dart*, 99 F.4th 1076, 1085 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 1166 (2025). Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Camp Drug Store*, 897 F.3d at 834 ("[A] named plaintiff is an essential ingredient of any class action. Therefore, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." (quoting *Cook v. Niedert*, 142 F.3d at 1016)).

Service awards are warranted here. As detailed in their concurrently filed declarations, the Settlement Class Representatives devoted considerable time and efforts here on behalf of the

Settlement Class. Among other things, they provided documents and information about their experiences to counsel; reviewed pleadings and other documents; regularly communicated with counsel about the status of the litigation and settlement negotiations; and reviewed and approved the proposed settlement and modified Settlement.[11]

Moreover, the amount of the service awards requested here—$7,500 each—is in line with amounts approved by courts in this Circuit in comparable circumstances. *See, e.g., Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service award to named plaintiffs who participated in pre-suit investigation, provided documents, and assisted plaintiffs' counsel in analyzing documents during the informal discovery process); *Briggs v. PNC Fin. Servs. Grp. Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) (approving $12,500 service award to named plaintiffs who participated in pre-suit investigation, provided documents, responded to document requests and interrogatories, and submitted declarations).

## **CONCLUSION**

For the foregoing reasons, Settlement Class Counsel respectfully request that the Court award: (a) Settlement Class Counsel $25 million in attorneys' fees, plus $307,158.03 to reimburse their expenses; and (b) the Settlement Class Representatives service awards of $7,500 each, with all such amounts to be paid by Discover pursuant to the terms of the Settlement.

---

[11] *See* Joint Decl., Exs. 7–11 (Plaintiff declarations).

Dated: December 1, 2025      Respectfully submitted,

By: */s/ Roger N. Heller*
   Roger N. Heller (pro hac vice)
   Michael K. Sheen (pro hac vice)
   LIEFF CABRASER HEIMANN &
   BERNSTEIN LLP
   275 Battery Street, 29th Floor
   San Francisco, California 94111
   Tel: (415) 956-1000
   Fax: (415) 956-1008
   rheller@lchb.com
   msheen@lchb.com

   Margaret M. Becko (pro hac vice)
   LIEFF CABRASER HEIMANN &
   BERNSTEIN LLP
   250 Hudson Street, 8th Floor
   New York, NY 10013-1413
   Tel.: (212) 355-9500
   Fax: (212) 355-9592
   mbecko@lchb.com

By: */s/ Taras Kick*
   Taras Kick (*pro hac vice* admitted)
   Tyler Dosaj (*pro hac vice* admitted)
   THE KICK LAW FIRM, APC
   815 Moraga Drive
   Los Angeles, California 90049
   Tel: (310) 395-2988
   Fax: (310) 395-2088
   Taras@kicklawfirm.com
   Tyler@kicklawfirm.com

By: */s/ Catherine Pratsinakis*
   Catherine Pratsinakis
   Nina C. Spizer
   DILWORTH PAXSON LLP
   1500 Market Street, Suite 3500E
   Philadelphia, PA 19102
   Telephone:  (215) 575-7000
   Facsimile:  (215) 575-7200
   cpratsinakis@dilworthlaw.com
   nspizer@dilworthlaw.com

   *Settlement Class Counsel*

## <u>CERTIFICATION PURSUANT TO GENERAL ORDER 16-0020</u>

I hereby certify that the content of the document is acceptable to all persons required to sign the document, and all such persons have consented to inclusion of their electronic signatures on the document.

Dated: December 1, 2025                           */s/ Catherine Pratsinakis*